UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
YIQUN ZHAO,

                                Plaintiff,

      -against-

LENNART C. BELOK, M.D. and
ELLEN L. BELOK a.k.a. ELLEN HONIG,

                               Defendants.
---------------------------------------------------------------X

1:24 Civ. 1793 (JHR) (JW)

**AMENDED COMPLAINT**

Plaintiff Demands a Jury

**[Redacted to remove HIPAA-Protected Information]**

      Plaintiff Yiqun Zhao, by her undersigned attorneys, as and for her complaint against defendants Lennart C. Belok, M.D. and Ellen L. Belok a.k.a. Ellen Honig, alleges as follows:

      1.     This is an action to recover compensatory and punitive damages for sexual assault and battery, negligence, breaches of fiduciary duties, and intentional infliction of emotional distress committed by plaintiff's treating physician, Lennart C. Belok, M.D., and his current or former wife, Ellen L. Belok a.k.a. Ellen Honig. Plaintiff also seeks a permanent injunction prohibiting the defendants from contacting her or her family.

**Jurisdiction and Venue**

      2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity) because the plaintiff and the defendants are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

      3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiff's claims occurred in this District.

## The Parties

4.      Plaintiff Yiqun Zhao is a former patient of defendant Lennart C. Belok, M.D.  She is a citizen of the People's Republic of China and resides in New York County in the State of New York.

5.      Defendant Lennart C. Belok, M.D. ("Dr. Belok") is a neurologist licensed to practice medicine by the State of New York.  He is also a Clinical Professor in the Department of Neurology at the NYU Grossman School of Medicine.  He is a citizen of and resides in the State of Connecticut.

6.      Defendant Ellen L. Belok a.k.a. Ellen Honig ("Mrs. Belok") is Dr. Belok's current or former wife.  She is a citizen of and resides in the State of Connecticut.

## Facts Relevant to All Claims

7.      In or about December 2020, plaintiff sought medical treatment from Dr. Belok for a number of neurological ailments including   [REDACTED]
.

8.      During his treatment of plaintiff, Dr. Belok became aware that she was under the [REDACTED]                                                              .  Dr. Belok knew that [REDACTED]
.

9.      Dr. Belok knew that plaintiff [REDACTED]                            .  He knew and certified that [REDACTED]
.

10.     Between 2020 and 2023, plaintiff saw Dr. Belok on a regular basis at his medical offices in Manhattan.

2

11. Dr. Belok developed an unprofessional, personal relationship with plaintiff and convinced her that he was the only person in her life who really cared about her. He gave plaintiff his personal mobile phone number and asked for her mobile phone number. He sent her frequent text messages on personal topics including his relationships with his wife and children.

12. Dr. Belok brought plaintiff into his confidence by disclosing details of his personal life unrelated to any professional treatment. He complained frequently about his wife and also disclosed details about their three sons.

13. Among the many personal text messages he sent to plaintiff, Dr. Belok wrote, "Look, Yiqun, I was in a non sexual marriage for over 15 years. I lost count already. Ellen has looked after me physically, meaning she chose and decorated a nice house. She makes sure there is food in the refrigerator and asks me what flavot [sic] yogurt I want. But Ellen rarely has a kind word to say, let alone any physical affection at all." Dr. Belok sent plaintiff other text messages on this subject, including one stating, "I resent Ellen bitterly because she essentially wasted the last 15 years of my life in terms of emotional connection, deprivation of actual touch, and of course sex."

14. Dr. Belok told plaintiff about his previous sex history, from the first time he had sex when he was 18 until the most recent time in 2009. He told plaintiff that he had sex with six different women including the wife of an NYU professor and that, after thinking about it for a while, it did not bother his moral standards.

15. Dr. Belok encouraged plaintiff to text and call him about her own personal issues unrelated to her neurological treatment. He encouraged her to talk about her family and her insecurities.

16. Dr. Belok often invited plaintiff to have lunch or dinner with him. He also invited her to attend a concert with him. He showed interest in plaintiff's work as a flutist and asked about her upcoming performances.

17. Dr. Belok shared with plaintiff the intimate, HIPAA-protected details of other patients he was treating. For example, Dr. Belok told plaintiff the name of a pianist he was treating for adult attention-deficit and performance anxiety, and he disclosed the medications that he prescribed for this patient. Dr. Belok told plaintiff details concerning another patient he was treating for anxiety, disclosed to plaintiff that he had given this patient a prescription for clonazepam, and showed plaintiff the other patient's medical records that revealed her name, age, blood test results, neurological results, and other HIPAA-protected information.

18. Dr. Belok told plaintiff that he had a patient in 2019 that he wanted to have sex with. He told plaintiff the patient's name and said that she was a pianist with a degree from Juilliard.

19. Upon information and belief, Dr. Belok violated his duty of confidentiality to these patients in an effort to impress upon plaintiff that she had a special, confidential relationship with him.

20. Plaintiff [REDACTED]

. She told him when there was "a big new issue" [REDACTED].

21. Dr. Belok responded with text messages at once assuring plaintiff that he was there for her, and at the same time warning her not to leave him. In one text message, he wrote, "You have a special relationship with me and I will always be here for you." In another text message, he wrote, "if you find another doctor, I will disown you." He frequently reminded

plaintiff that he was responsible for the treatment notes that were being used to support her disability claims.

22. Dr. Belok used [REDACTED]                                          , and his influence as her personal physician, to destabilize her and drive a wedge between plaintiff and her family and other medical professionals.

23. Dr. Belok spoke to plaintiff and sent her text messages warning that [REDACTED]                              . He frequently criticized her mother and told plaintiff that her mother's "passive aggressive" nature was to blame for some of her mental health issues.

24. Dr. Belok spoke to plaintiff and sent her text messages encouraging her [REDACTED]

He told plaintiff [REDACTED]                                          . Dr. Belok emphasized to plaintiff that [REDACTED]                                          .

25. By May 2023, plaintiff was confused, disoriented, fearful, and unable to resist Dr. Belok's influence. She feared that Dr. Belok would stop supporting her disability claims if she resisted his attempts to involve himself in her personal life. She also feared that Dr. Belok would use his intimate knowledge of her personal life to blackmail her.

26. Dr. Belok's text messages became more frequent, more personal, and sexually suggestive. In some of the text messages, Dr. Belok told plaintiff:

"You are the sexiest woman I have ever met."

"I love to smell your hair."

"I always wanted a relationship with a musician, especially classical style."

"Your body deserves some fun and relaxation."

"I would be very happy to do you every day."

"Goodnight!  I will be here for you tomorrow morning!  Kiss."

27.     Dr. Belok imposed himself on plaintiff in many different ways.  For example, he asked to stay overnight in plaintiff's apartment in Manhattan with her family on August 2, 2023, because he was having surgery in Manhattan the next day.  Plaintiff was not happy about his request but felt pressured to let him stay with them.

28.     Over time, Dr. Belok's text messages became more overt and graphic in their sexual content.  In some of the text messages, Dr. Belok told plaintiff:

"Every time you send me a message…..  my penis wakes up a little, gets a little longer, and thicker, and rubs against my pants a little"

"My penis has never reacted to anyone else like that before."

"I'm picturing you lying in [sic] your back, with your knees tied up in a flexed position.  So I could see your hairy cunt poking out…  You would not be able to prevent me from sticking my hard cock into you."

"Did anyone ever bite your clit?"

"Your pussy gets my cock!!!  That's what you have a pussy for!  To service me!!!"

"would you like me to fuck you the next time we meet?"

"Now spread those long legs…  And open your pussy for me."

"I want to see your hairy pussy lips."

"My cock has been waiting to fuck you.  And you are going to like it."

"As my cock gets longer and thicker each time its [sic] goes into your pussy and then deeper into your vagina Again and again."

6

"I fucked you good  Now we can fall asleep, together."

"You really are a great fuck, Did anyone ever tell you that?"

"And you hetter [sic] not fuck anyone but me!  Except your husband, of course."

29. Dr. Belok's conduct caused [REDACTED]

She was worried that Dr. Belok would stop treating her physical symptoms, prescribing medications, referring her to other physicians, and filling out paperwork for disability benefits if she refused to go along with his sexually explicit conversations.  Plaintiff told Dr. Belok, "I'm worried if one day we don't get along with each other anymore, you'll use our conversation to threaten me."

30. Dr. Belok responded to plaintiff with a text message acknowledging her "concern that you were at risk for blackmail from me because you have exposed your thoughts and desires."  But Dr. Belok did nothing to dispel that concern.  Instead, he used plaintiff's fears and anxiety to keep her under his control and to prevent her from disclosing his graphic, sexual text messages to others.

31. In June 2023, plaintiff confided in Dr. Belok that [REDACTED]

She sent Dr. Belok a text message stating, [REDACTED]

32. Notwithstanding his knowledge that [REDACTED]

, Dr. Belok laughed off plaintiff's question with a feeble joke.  He responded, [REDACTED]

33. [REDACTED] Dr. Belok thought immediately about protecting himself.  Dr. Belok told plaintiff that [REDACTED]

7

the police would conduct an investigation and look at the text messages on her phone. Dr. Belok told plaintiff that the police should not find out about those text messages. Dr. Belok told plaintiff to delete all of his text messages from her cell phone.

34. On June 12, 2023, Dr. Belok told plaintiff [REDACTED]

35. During a call in June 2023, Dr. Belok threatened plaintiff and warned her not to tell her primary care physician or psychiatrist about his sexual texts and advances. He instilled in plaintiff a fear that the insurance company would deny her benefits if they learned that Dr. Belok, who was certifying her disability, wanted to have sex with her. Because of Dr. Belok's express and implied threats, plaintiff was afraid to talk to anyone, including her other healthcare providers.

36. On July 26, 2023, plaintiff was Dr. Belok's last patient of the day at his private practice at 340 East 49th Street in Manhattan. Dr. Belok hugged plaintiff, pulled her towards him, and kissed her on her lips, mouth, and all over her face. Dr. Belok touched plaintiff's breasts while kissing her. He opened up the zipper on the back of plaintiff's dress, pulled it down so that he was able to see her breasts, touched them, and sucked on her nipples with his mouth. Dr. Belok pulled up plaintiff's dress, pulled her underwear to the side, and touched her pubic hair and vaginal area. Dr. Belok kissed plaintiff's vagina area and penetrated his finger into her vagina. All the while, Dr. Belok made sexual comments including "you taste wonderful down there" and "I like this nipple more."

37. On October 6, 2023, Dr. Belok again arranged for plaintiff to be his last patient of the day. After they entered his office, Dr. Belok locked the door facing the street, turned to plaintiff, and said, "You are now my prisoner." Dr. Belok pulled plaintiff towards him, hugged her, kissed her, and touched her on her breasts and between her legs. Dr. Belok laid padding on the floor and told plaintiff to lay down on it. He kissed plaintiff and touched her breasts and nipples while laying on top of her. Dr. Belok opened up the belt on plaintiff's pants and took off her pants and underwear. He laid down, put his head on plaintiff's thigh, and started to kiss her vagina. Dr. Belok put his fingers into her vagina causing her severe pain.

38. Dr. Belok continued to use his role as plaintiff's personal physician and gatekeeper of disability benefits to control her. On or about October 7, 2023, Dr. Belok sent plaintiff text messages assuring her that they could draft his treatment notes together to ensure that she continued receiving disability benefits. In one text message he wrote, "If you have specific suggestions on how my notes should be phrased, we can do them together for optimal documentation." Dr. Belok continued, "I really want to help your situation as much as I can. I really care about you a whole lot."

39. Upon information and belief, in or about October, 2023, Mrs. Belok discovered the sexually explicit text messages that Dr. Belok had been sending to plaintiff.

40. On October 11, 2023, Mrs. Belok sent Dr. Belok a text message acknowledging that her husband had violated his professional duties to his patient. In the text message, Mrs. Belok told Dr. Belok, "You will be sued big time bc a MD fooling around w a patient in the office is a big no no. How could you be so stupid?"

41. Significantly missing from Mrs. Belok's text message is any acknowledgment of the harm that her husband had caused to his patient. Her only concern was what would happen

9

to her and her husband if he lost his job as a result of his sexual misconduct. She wrote that with "no jobs we haven't enough $$ to sustain this household."

42.     Concerned solely for their own financial welfare, Dr. Belok and Mrs. Belok went on a campaign to callously attack and demean plaintiff.

43.     Mrs. Belok sent threatening messages to plaintiff and her husband. In one text message she warned that plaintiff's family would soon learn about her text messages with Dr. Belok. Mrs. Belok wrote, "You're a 2 bit whore. Your husband, mother & child know what you do? They will….. Very soon. You play w fire you get burned."

44.     Mrs. Belok followed up on her threat to contact plaintiff's family by sending a LinkedIn message to plaintiff's husband stating, "you don't know me but you know my husband Dr. Belok. Your wife and he have been dating, exchanging sex texts, etc. I found it. She sends him long sexual conversations. Watch out. Your little wife is a whore."

45.     Mrs. Belok knew when she sent that message to plaintiff's husband that it was false and misleading. Having read the text messages between Dr. Belok and plaintiff, she knew that plaintiff had not sent any long messages to Dr. Belok. To the contrary, the text messages reveal that Dr. Belok was the one who was sending long, graphically sexual text messages to plaintiff. Indeed, Dr. Belok told plaintiff that he had admitted to Mrs. Belok that he was responsible for initiating sexual contact with plaintiff. He told plaintiff to block Mrs. Belok's phone number because "she can be deliberately cruel."

46.     Not content with threatening plaintiff via text messages, phone records show that, on October 17, 2023, Mrs. Belok and Dr. Belok called plaintiff at home six times between 12:57 a.m. and 2:18 a.m. to harass plaintiff and her family. Dr. Belok left voicemail messages threatening that he would not be plaintiff's doctor anymore.

47.     As a direct and proximate result of defendants' actions, plaintiff has suffered and continues to suffer physical pain and severe emotional distress [REDACTED]

because of the stress caused by Dr. Belok's conduct and the threats she received from both Dr. Belok and Mrs. Belok.  Plaintiff was required [REDACTED]

In addition, plaintiff was required to find a new neurologist, which caused discontinuity in her treatment.

## FIRST CLAIM FOR RELIEF
## AGAINST DR. BELOK FOR SEXUAL ASSAULT AND BATTERY

48.     Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

49.     Dr. Belok intentionally placed plaintiff in fear of imminent harmful or offensive contact, including contact with her breasts, nipples, inner thighs, and vagina.

50.     Dr. Belok intentionally made bodily contact with plaintiff, including with her breasts, nipples, inner thighs, and vagina.

51.     The bodily contact was harmful and/or offensive in nature.

52.     Dr. Belok's conduct proximately caused plaintiff to suffer injuries, including physical pain and severe emotional distress.

53.     Plaintiff is entitled to an award of compensatory and punitive damages against Dr. Belok in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF
## AGAINST DR. BELOK FOR NEGLIGENCE

54. Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

55. Dr. Belok assumed duties to plaintiff, including a duty to provide care, treatment, and advice unbiased by his personal and/or sexual desires.

56. Dr. Belok breached his duties to plaintiff.

57. Dr. Belok's breaches of his duties proximately caused plaintiff to suffer injuries, including physical pain and severe emotional distress.

58. Plaintiff is entitled to an award of compensatory and punitive damages against Dr. Belok in amounts to be determined at trial.

## THIRD CLAIM FOR RELIEF
## AGAINST DR. BELOK FOR BREACHES OF FIDUCIARY DUTIES

59. Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

60. Dr. Belok entered into a fiduciary relationship with plaintiff.

61. Dr. Belok breached his fiduciary duties to plaintiff by engaging in misconduct.

62. Dr. Belok's breach of fiduciary duties directly and proximately caused plaintiff to suffer injuries, including without limitation severe emotional distress.

63. Plaintiff is entitled to an award of compensatory and punitive damages against Dr. Belok in amounts to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## AGAINST DR. BELOK AND MRS. BELOK FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64. Plaintiff repeats and realleges each allegation set forth above as if fully set forth herein.

65. Dr. Belok and Mrs. Belok engaged in extreme and outrageous conduct towards plaintiff.

66. Dr. Belok and Mrs. Belok intended to cause, or disregarded a substantial probability of causing, plaintiff to suffer severe emotional distress.

67. Dr. Belok's and Mrs. Belok's conduct proximately caused plaintiff to suffer injuries including without limitation severe emotional distress.

68. Plaintiff is entitled to an award of compensatory and punitive damages against Dr. Belok and Mrs. Belok, jointly and severally, in amounts to be determined at trial

## JURY DEMAND

69. Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Yiqun Zhao requests entry of an order and judgment awarding her compensatory and punitive damages against each defendant, a permanent injunction prohibiting each defendant from contacting plaintiff or her family directly or indirectly, and such

other and further relief as this Court deems just.

Dated: New York, New York  
       June 7, 2024

THE HOWLEY LAW FIRM P.C.

By:   */s John Howley*_____  
    John Howley, Esq.  
1345 Avenue of the Americas, 2nd Floor  
New York, New York 10105  
(212) 601-2728  
jhowley@howleylawfirm.com  
*Attorneys for Plaintiff*

14